Susan **WICKLUND, M.D.; James H. Armstrong, M.D.; Lindsay Richards, M.D., Susan Cahill, P.A.; Douglas Webber, M.D.; Beth E. Thompson, M.D.; Mary Stranahan, D.O.; and Mark Miles, M.D., on behalf of themselves and their patients throughout Montana, and surrounding states and Canada, Plaintiffs–Appellees,**

v.

**Michael SALVAGNI, Defendant–Appellant.**

**No. 95–36028.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted July 10, 1996.

Decided Aug. 16, 1996.

Clay R. Smith, Assistant Attorney General, Helena, Montana, for defendant-appellant.

Simon Heller, Center for Reproductive Law and Policy, New York City, for plaintiff-appellee.

Before: REAVLEY,* REINHARDT, WIGGINS, Circuit Judges.

## OPINION

REINHARDT, Circuit Judge:

The issue in this case is whether a Montana statute that requires that minors notify a parent before obtaining an abortion is constitutional. The statute provides for a form of "judicial bypass" of its parental notification provision for certain minors. Plaintiffs filed an action in district court contending that the notification statute was unconstitutional because the bypass was inadequate. The district court found the statute unconstitutional. On appeal the parties explore a number of difficult issues. We do not reach them because we conclude that we are bound by our earlier decision in *Glick v. McKay*, 937 F.2d 434 (9th Cir.1991), and therefore affirm.

**Background and Procedural History**

In November 1993, six physicians, a physician assistant, and an organization providing abortion services brought suit on behalf of Dr. Susan Wicklund as well as minors of Montana and neighboring states challenging Montana's Abortion Control Act, Mont.Code Ann. § 50–20–107(1)(b) (1993). The Act required minors to notify their parents before obtaining an abortion. It did not provide for a judicial or alternate bypass procedure through which a qualified minor could avoid giving notice in appropriate circumstances. In December 1993, the District Court issued an order permanently enjoining the enforcement of Mont.Code Ann. § 50–20–107(1)(b),

---

* Honorable Thomas M. Reavley, Senior United States Circuit Judge for the Fifth Circuit, sitting by designation.

based on a stipulation by the defendant that the provision was unconstitutional.

■ In direct response to that court order, the Montana Legislature repealed § 50–20–107 and passed a new parental notification law entitled the Parental Notice of Abortion Act (the Act). Mont.Code Ann. § 50–20–201 et seq (1995). That Act, which is now before us, prohibits a physician from performing an abortion upon a minor or an incompetent person unless that physician or a referring physician has given 48 hours actual notice to one parent or a legal guardian of the patient concerning the intent to perform the abortion. Mont.Code Ann. § 50–20–204. Notice need not be given under certain circumstances, including when it is waived judicially under Mont.Code Ann. § 50–20–208. Section 50–20–212's bypass provision states:

**Procedures for judicial waiver of notice**

(2) (a) The minor or incompetent person may petition the youth court for a waiver of the notice requirement and may participate in the proceedings on the person's own behalf.

(4) If the court finds by clear and convincing evidence that the petitioner is sufficiently mature to decide whether to have an abortion, the court shall issue an order authorizing the minor to consent to the performance or inducement of an abortion without the notification of a parent or guardian.

(5) The court shall issue an order authorizing the petitioner to consent to an abortion without notification of a parent or guardian if the court finds by clear and convincing evidence, that:

(b) *the notification of a parent or guardian is not in the best interests of the petitioner.*

Plaintiffs filed a motion for leave to file a supplemental complaint to challenge the constitutionality of the act, which the district court granted. The parties filed cross-motions for summary judgment, and the district court granted plaintiffs'. The district court determined that a minor who seeks to bypass parental notification and shows that *an abortion is in her best interests* must be able to obtain an abortion without notifying a parent of guardian. The County Attorney appeals.

**Analysis**

■ Over the last 15 years, the Supreme Court has examined the circumstances under which states may require parental *consent* before allowing a minor to procure an abortion. *E.g., City of Akron v. Akron Center for Reproductive Health,* 462 U.S. 416, 103 S.Ct. 2481, 76 L.Ed.2d 687 (1983)(*Akron I* ); *Planned Parenthood Association of Kansas v. Ashcroft,* 462 U.S. 476, 103 S.Ct. 2517, 76 L.Ed.2d 733 (1983); *Bellotti v. Baird,* 443 U.S. 622, 99 S.Ct. 3035, 61 L.Ed.2d 797 (1979). Where a minor is insufficiently mature or emancipated to make the abortion decision for herself, the state may require such consent. *Bellotti,* 443 U.S. at 640, 99 S.Ct. at 3046–47 (plurality opinion). However, if the state does so, the statute must also include a means by which "qualified" minors may circumvent the requirement. *Id.* at 643, 99 S.Ct. at 3048; *see also Akron I,* 462 U.S. at 439–40, 103 S.Ct. at 2497–98. That typically comes in the form of a "judicial bypass." A judicial bypass is designed to allow the minor the opportunity to persuade the court to allow her to have an abortion without having to notify a parent and obtain parental consent. Under *Bellotti,* a minor is entitled to avoid having to a bypass if she can show either:

(1) that she is mature enough and well informed enough to make her abortion decision, in consultation with her physician, independently of her parents' wishes; or
(2) that even if she is not able to make this decision independently, the desired abortion would be in her best interests.

*Bellotti,* 443 U.S. at 643–44, 99 S.Ct. at 3048 (plurality opinion); *see also Akron II,* 497 U.S. at 511–13, 110 S.Ct. at 2979–80 (citing *Bellotti* ). In addition, "[t]he proceeding in which this showing is made must assure that a resolution of the issue, and any appeals that may follow, will be completed with anonymity and sufficient expedition to provide an effective opportunity for an abortion to be obtained." *Bellotti,* 443 U.S. at 644, 99 S.Ct. at 3048.

The Supreme Court has left open the question of whether or not a judicial bypass to a

parental notification provision (such as the one at issue here) is constitutionally required. The Court considered the constitutionality of a notification provision in *Ohio v. Akron Center for Reproductive Health,* 497 U.S. 502, 110 S.Ct. 2972, 111 L.Ed.2d 405 (1990)(*Akron II* ), but avoided deciding whether a bypass was required. In *Akron II,* the Court first considered whether the notice bypass of the Ohio statute met the test for a consent-bypass set forth in *Bellotti:*

> In analyzing this aspect of the dispute, we note that, although our cases have required bypass procedures for parental consent statutes, we have not decided whether parental notice statutes must contain such procedures. We leave the question open, because, whether or not the Fourteenth Amendment requires notice statutes to contain bypass procedures, H.B. 319's bypass procedure meets the requirements identified for parental consent statutes in *[Planned Parenthood of Central Missouri v.] Danforth* [428 U.S. 52, 96 S.Ct. 2831, 49 L.Ed.2d 788 (1976)], Bellotti, Ashcroft, and Akron. [I]t is a corollary to the greater inclusiveness of consent statutes that a bypass procedure that will suffice for a consent statute will suffice also for a notice statute.

*Akron II,* 497 U.S. at 510–11, 110 S.Ct. at 2978–79. Because the Court concluded that the notice-bypass provision satisfied the *Bellotti* standard, it did not reach the question whether a notice-bypass is constitutionally required, and if so, what form it must take.[1]

■ Appellees contend that the Montana statute is unconstitutional because it does not provide for a bypass as a matter of right to those minors who can show that *an abortion is in their best interests.* Justice Powell's opinion in *Bellotti,* 443 U.S. at 643, 99 S.Ct. at 3048, and subsequent cases make clear that where a minor can show that (1) she is sufficiently mature to make her own decision whether to have an abortion or (2) an abortion is in her best interests, state law must

allow her to obtain that abortion without obtaining parental consent. *Akron II,* 497 U.S. at 510–11, 110 S.Ct. at 2978–79. Apparently in obedience to that dictate, the Montana statute allows mature minors to avoid parental notification. However, unlike in states with consent statutes, minors in Montana who can show that an abortion is in their best interests may nevertheless be compelled to comply with the parental notification requirement.

Appellees argue that if a minor is willing to go to court, undergo the emotional strain and practical difficulties of the judicial bypass procedure, and establish that it is in her best interests to have an abortion, her actions demonstrate that she is so afraid or unwilling to inform her parents that forcing her to do so would constitute an undue burden on her right to have an abortion. Appellees contend, therefore, that a minor who is unalterably opposed to letting her parents know of her condition, and her plans for an abortion, should be able to obtain a waiver of the parental notification requirement simply by showing that having an abortion is in her best interests. They argue that whatever the judge may think objectively of the wisdom of a minor's notifying her parents, the question is a highly subjective one, and if, in the end, the young woman is sufficiently distressed by the prospect of a hostile or abusive parental reaction that she is unwilling to notify them, then the notification requirement will necessarily constitute an undue burden. In short, the argument goes, if a young woman *in whose best interests it is to have an abortion* is too afraid or humiliated to tell her parent that she is pregnant, she must be able to avoid the notification requirement, whether or not a court concludes that it would be in her best interests· to give the statutorily mandated notice. Otherwise, say appellees, the minor may in effect be precluded from having the abortion that is in her best interests and that she fervently desires.[2]

1. The Supreme Court has suggested that an administrative as well as a judicial bypass might be valid under parental consent statutes. *Bellotti,* 443 U.S. at 643 n. 22, 99 S.Ct. at 3048 n. 22.

2. Appellees' arguments bring to mind the statement of Justice Kennard in her dissenting opinion in *American Academy of Pediatrics v. Lungren,* 12 Cal.4th 1007, 51 Cal.Rptr.2d 201, 912 P.2d 1148 (1996), *rehearing granted,* May 22, 1996. "Not every pregnant adolescent has par-

Appellant vigorously disagrees. He contends that it is in fact *less* burdensome for a minor to demonstrate that notification is not in her best interests than it is for her to show that an abortion is. He also argues that appellees' concerns about the bypass provision's being linked to a minor's showing that notification is not in her best interests are misplaced because the judge conducting the bypass hearing may consider any argument the minor makes as to why an abortion is in her best interests in making his ultimate decision as to whether parental notification will be waived. Next, he points to the manifold benefits that flow from parental counseling, whether or not the minor desires it, and points out that no one is in a better position to give desperately needed advice to a young person at what is surely the most critical point in her life. Finally, appellant maintains that because in a notice statute, unlike in a consent statute, the ultimate decision as to whether to have an abortion, rests with the minor, it is appropriate that the judge consider whether notification rather than the abortion is in her best interests.

If we were considering this issue for the first time, we would be faced with a difficult constitutional problem; for there is considerable force to each side of the argument, and the Supreme Court has not made clear what the Constitution requires. However, *this court* has already spoken. In *Glick v. McKay,* 937 F.2d 434 (9th Cir.1991), we found unconstitutional a Nevada parental notification statute with a "best interests" bypass standard that was virtually identical to the one at issue here. The bypass provision of the Nevada statute provided that a minor seeking an abortion could bypass parental notification if she could show that *"the notice ... would be detrimental to her best interests."* Nev.Rev.Stat. § 442.255(2)(c) (1995) (emphasis added). In *Glick,* we held that statute unconstitutional in part because the quoted provision "impermissibly constricted the meaning of 'best interests.'" 937 F.2d at 442.

In *Glick,* which was decided after *Akron II,* we first pointed out that Nevada's statute failed to allow the minor "to show that even if she cannot make the abortion decision by herself, the desired abortion would be in her best interests." *Glick,* 937 F.2d at 438–39. We then said that the omission of such a provision contravened the requirements of *Bellotti. Id.* Specifically, we noted that Nevada's bypass procedure, "both at the initial judicial interview and at the petition hearing, allows the minor to show that *parental notification* would not be in her best interests, and requires the court to authorize the abortion in such instances." *Id.* at 438. We then stated, "[t]he language of these provisions *does not meet the requirement of Bellotti. Id.* at 439. Rather than requiring the reviewing court to consider the minor's 'best interests' generally, the Nevada statute requires the consideration of 'best interests' only with respect to the possible consequences of parental notification." We continued, "[f]urthermore, in *Bellotti,* the court expressly stated, '[i]f, all things considered, the court determines that an abortion is in the minor's best interests, she is entitled to court authorization *without any parental involvement.'" Id.* (citing *Bellotti,* 443 U.S. at 648, 99 S.Ct. at 3050) (emphasis added). Then came the critical language. The *Glick* court concluded that "the Nevada statute impermissibly narrows the *Bellotti* 'best interests' criterion, *and is unconstitutional." Id.* (emphasis added).

While there is some ambiguity in *Glick,* we cannot escape the conclusion that a reason for its holding that the Nevada provision was unconstitutional was that the judicial officer was required to determine whether parental notification, rather than the proposed abortion, was in the minor's best interests. The ambiguity occurs because, after explicitly declaring that the best interests standard employed in the statute is *"unconstitutional,"* *Glick* went on to say, "[b]ecause we hold that the Nevada bypass procedure does not meet the constitutional requirements of a consent statute, we must consider whether it meets the requirements of the less intrusive notifi-

ents out of the comforting and idyllic world of Norman Rockwell." *Id.* 51 Cal.Rptr.2d at 224,

912 P.2d at 1153 (Kennard, J., dissenting).

cation statute." *Glick*, 937 F.2d at 441 (citing *H.L. v. Matheson*, 450 U.S. 398, n. 17, 101 S.Ct. 1164, 67 L.Ed.2d 388 (1981)). Then, *Glick* proceeded to reexamine Nevada's bypass procedure. It is this reexamination that appellant contends permits us to avoid the holding that Nevada's best interests provision was unconstitutional. Unfortunately for appellant, however, our reexamination did not change our conclusion.

While we would be reluctant in any event to disregard a flat determination by our court that a statutory provision is "unconstitutional," we certainly cannot disregard such a determination in this case. For in *Glick* we stated our conclusion not once, but twice. Toward the end of *Glick* we stated for the second time that the Nevada bypass mechanism was constitutionally inadequate. 937 F.2d at 442. The second time we did so in the section in which we reexamined the adequacy of the bypass provision. After carefully conducting that reexamination, we stated, in connection with our discussion of another constitutional flaw in the provision: [3] "that Nevada has *impermissibly constricted* the meaning of 'best interests' only adds to the infirmity." *Glick*, 937 F.2d at 442 (emphasis added). There can be no doubt after that second declaration of constitutional impermissibility that *Glick* stands for the proposition that the type of best interests bypass provision set forth in the Nevada statute cannot pass constitutional muster. Because the best interests bypass provision of the Montana statute is, for all practical purposes, identical to the Nevada provision, it cannot either.

■ Appellant contends that we should "overrule" *Glick* because it is inconsistent with the Supreme Court's decision in *Akron II*. We disagree. Even if we thought *Glick* were incorrect, as a panel of this court we would not be free to overrule it. *Glick* was issued subsequent to *Akron II*; in fact, the *Glick* court vacated submission of the case to await the Supreme Court decision in *Akron II*. It was not only aware of that opinion, it considered it and relied on it in reaching its

conclusion. We are therefore not free simply to disregard *Glick*. Accordingly, we must uphold the district court's determination that the Montana bypass provision is unconstitutional.

We need not reach appellees' other argument, which the district court also did not consider, that Montana's statute fails adequately to protect the anonymity of minors who petition for notice bypass. Because Montana's statute does not meet the best interests requirement set forth in *Glick v. McKay*, the district court order granting appellees' motion for summary judgment is

AFFIRMED.

---

**3.** The flaw that we considered principally in the latter part of *Glick,* was the failure of the statute to guarantee an expedient resolution of the by-

pass proceeding because it did not set time limits within which the judge was required to rule on the minor's petition. 937 F.2d at 440–41.