**PLANNED PARENTHOOD of Southern Arizona; Planned Parenthood of Central and Northern Arizona; and David L. Child, M.D., Plaintiffs,**

v.

**Pima County Attorney, Barbara LAWALL; and Arizona Attorney General, Janet Napolitano, as the representative of all prosecutors in the State of Arizona, Defendants.**

No. CV 00–386–TUC.

United States District Court,
D. Arizona.

Aug. 9, 2001.

John N. Iurino, Lewis & Roca, Tucson, AZ, Eve C. Gartner, Planned Parenthood Federation of America, New York City, Lawrence Jay Rosenfeld, Greenberg Traurig LLP, Phoenix, AZ, for Plaintiffs.

Christopher Straub, Pima County Attorney's Office, Tucson, AZ, Paula S. Bickett, Office of the Attorney General, Phoenix, AZ, Charles R. Pyle, Attorney General's Office, Tucson, AZ, for defendants.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

COLLINS, District Judge.

This action is a constitutional facial challenge to A.R.S. § 36–2152, which prohibits an unemancipated minor from obtaining an abortion without parental consent, unless she obtains a judicial bypass of the requirement. Physicians who perform abortions in violation of the statute are guilty of a class one misdemeanor. Plaintiffs' Complaint requests a declaratory judgement, declaring A.R.S. § 36–2152 unconstitutional, and a permanent injunction against its enforcement. Plaintiffs are health-care providers whose practice includes providing abortions for unemancipated minor women and, but for the provisions of A.R.S. § 36–2152, would not need parental consent to do so. Defendants are certified as a class of all prosecuting attorneys in the state of Arizona.

The legislature of the State of Arizona has sought to enact a parental consent statute since at least 1989. The two previous versions of the statute failed to pass constitutional muster. The 1989 version was permanently enjoined in *Planned Parenthood v. Neely*, 804 F.Supp. 1210 (D.Ariz.1992). The 1996 version was enjoined and upheld on appeal by the Ninth Circuit Court of Appeals in *Planned Parenthood v. Lawall*, 180 F.3d 1022 (9th Cir. 1999). The most recent version of the statute was passed by the legislature in April 2000, and was scheduled to take effect July 18, 2000. On July 14, 2000, the Court issued a preliminary injunction enjoining the state from enforcing the statute. A bench trial was held on September 15, 2000, at which time the Court took the matter under advisement.

Plaintiffs allege that the statute is constitutionally defective for the following reasons:

1. It does not assure the confidentiality of a young woman who seeks a judicial bypass;

2. Its standards for proving maturity and best interests do not comport with governing law; and

3. Its affirmative defense, objective standard of proof and conflicting scienter requirements violate the due process rights of physicians and will chill them from performing abortions.

Below, the Court provides its findings of fact and conclusions of law pursuant to Federal Rule 52(a). To the extent that any findings of fact constitute a conclusion of law, the Court hereby adopts it as such, and to the extent that any conclusions of law constitute a finding of fact, the Court hereby adopts it as such.

### FINDINGS OF FACT

1. A.R.S. § 36–2152 was promulgated by the Arizona legislature and scheduled to take effect July 18, 2000.

2. A.R.S. § 36–2152 provides:

A. A person shall not knowingly perform an abortion on a pregnant unemancipated minor unless the attending phy-

sician has secured the written consent from one of the minor's parents or the minor's guardian or conservator or unless a judge of the superior court authorizes the physician to perform the abortion pursuant to subsection B.

B. A judge of the superior court shall, on petition or motion, and after an appropriate hearing, authorize a physician to perform the abortion if the judge determines that the pregnant minor is mature and capable of giving informed consent to the proposed abortion. If the judge determines that the pregnant minor is not mature or if the pregnant minor does not claim to be mature, the judge shall determine whether the performance of an abortion on her without the consent from one of her parents or her guardian or conservator would be in her best interests and shall authorize a physician to perform the abortion without consent if the judge concludes that the pregnant minor's best interests would be served.

C. The pregnant minor may participate in the court proceedings on her own behalf. The court may appoint a guardian ad litem for her. The court shall advise her that she has the right to court appointed counsel and shall, on her request, provide her with counsel unless she appears through private counsel or she knowingly and intelligently waives her right to counsel.

D. Proceedings in the court under this section are confidential and have precedence over other pending matters. Members of the public shall not inspect, obtain copies of or otherwise have access to records of court proceedings under this section unless authorized by law. A judge who conducts proceedings under this section shall make in writing specific factual findings and legal conclusions supporting the decision and shall order a confidential record of the evidence to be maintained including the judge's own findings and conclusions. The minor may file the petition using a fictitious name. For purposes of this subsection, public does not include judges, clerks, administrators, professionals or other persons employed by or working under the supervision of the court or employees of other public agencies who are authorized by state or federal rule or law to inspect and copy closed court records.

E. The court shall hold the hearing and shall issue a ruling within forty-eight hours, excluding weekends and holidays, after the petition is filed. If the court fails to issue a ruling within this time period the petition is deemed to have been granted and the consent requirement is waived.

F. An expedited confidential appeal is available to a pregnant minor for whom the court denies an order authorizing an abortion without parental consent. The appellate court shall hold the hearing and issue a ruling within forty-eight hours, excluding weekends and holidays, after the petition for appellate review is filed. Filing fees are not required of the pregnant minor at either the trial or the appellate level.

G. Parental consent or judicial authorization is not required under this section if either:

1. The pregnant minor certifies to the attending physician that the pregnancy resulted from sexual conduct with a minor by the minor's parent, stepparent, uncle, grandparent, sibling, adoptive parent, legal guardian or foster parent or by a person who lives in the same household with the minor and the minor's mother. The physician performing the abortion shall report the sexual conduct with a minor to the proper law enforcement officials pursuant to § 13–3620 and shall preserve and forward a

sample of the fetal tissue to these officials for use in a criminal investigation.

2. The attending physician certifies in the pregnant minor's medical record that, on the basis of the physician's good faith clinical judgment, the pregnant minor has a condition that so complicates her medical condition as to necessitate the immediate abortion of her pregnancy to avert her death or for which a delay will create serious risk of substantial and irreversible impairment of major bodily function.

H. A person who performs an abortion in violation of this section is guilty of a class 1 misdemeanor. A person is not subject to any liability under this section if the person establishes by written evidence that the person relied on evidence sufficient to convince a careful and prudent person that the representations of the pregnant minor regarding information necessary to comply with this section are true.

I. For purposes of this section:

1. "Abortion" means the use of an instrument, medicine or drug or other substance or device with the intent to terminate a pregnancy for reasons other than to increase the probability of a live birth, to preserve the life or health of the child after a live birth, to terminate an ectopic pregnancy or to remove a dead fetus. Abortion does not include birth control devices or oral contraceptives that inhibit or prevent ovulation, fertilization or the implantation of a fertilized ovum within the uterus.

2. "Fetus" means any individual human organism from fertilization until birth.

Ariz.Rev.Stat. § 36–2152 (Supp.2000).

3. "A public officer or employee shall not disclose or use, without appropriate authorization, any information that is acquired by the officer or employee in the course of the officer's or employee's official duties and that is declared confidential by law." Ariz.Rev.Stat. § 38–504(B) (Supp.2000).

**CONCLUSIONS OF LAW**

1. The Court has jurisdiction of this matter pursuant to 28 U.S.C. §§ 1331 and 1343(3).

2. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b).

3. "A facial challenge to a legislative Act is, of course, the most difficult challenge to mount successfully, since the challenger must establish that no set of circumstances exists under which the Act would be valid." *United States v. Salerno*, 481 U.S. 739, 745, 107 S.Ct. 2095, 95 L.Ed.2d 697 (1987).

4. A woman has a constitutional liberty to terminate her pregnancy and the state has an interest in the protection of potential life. *See Planned Parenthood v. Casey*, 505 U.S. 833, 869–70, 112 S.Ct. 2791, 120 L.Ed.2d 674 (1992). A law restricting abortion constitutes an undue burden and is facially invalid if, in a large fraction of the cases in which the law is relevant, it will operate as a substantial obstruction to a woman's choice to undergo an abortion. *Id.* at 895, 112 S.Ct. 2791.

5. Although minors are entitled to constitutional protection, those rights are not always co-extensive with adults due to their vulnerability, lack of maturity to make informed decisions, and the important role of parents in raising a child, and the State may regulate in support of those limitations. *See Bellotti v. Baird*, 443 U.S. 622, 634–35, 99 S.Ct. 3035, 61 L.Ed.2d 797 (1979). Due to the unique circumstances and consequences surrounding the decision of

whether to have an abortion, the Supreme Court holds that when a State requires a minor to have parental consent for an abortion, "it must also provide an alternative procedure whereby authorization for the abortion can be obtained." *See id.* at 643, 99 S.Ct. 3035. To satisfy the undue burden standard, the provided alternative must comply with the following requirements:

A pregnant minor is entitled in such a proceeding to show either: (1) that she is mature enough and well enough informed to make her abortion decision, in consultation with her physician, independently of her parents' wishes; or (2) that even if she is not able to make this decision independently, the desired abortion would be in her best interests. The proceeding in which this showing is made must assure that a resolution of the issue, and any appeals that may follow, will be completed with anonymity and sufficient expedition to provide an effective opportunity for an abortion to be obtained.

*Id.*

## 6. Confidentiality

Plaintiffs argue that the statute does not adequately protect a minor's anonymity, primarily because of the large exception to the definition of "public." The relevant portions of the statute provide:

Proceedings in the court under this section are confidential ... Members of the public shall not inspect, obtain copies of or otherwise have access to records of court proceedings under this section unless authorized by law.... The minor may file the petition using a fictitious name. For purposes of this subsection, public does not include judges, clerks, administrators, professionals or other persons employed by or working under the supervision of the court.

Ariz.Rev.Stat. § 36–2152(D) (Supp.2000).

■ A statute satisfies the *Bellotti* requirement of anonymity if it "takes reasonable steps to prevent the public from learning of the minor's identity." *See Ohio v. Akron Center for Reproductive Health,* 497 U.S. 502, 513, 110 S.Ct. 2972, 111 L.Ed.2d 405 (1990). The Court upheld the Ohio statute in *Akron* because it designated the proceedings as confidential, and Ohio law makes it unlawful for a state employee to disclose confidential information. *See Akron,* 497 U.S. at 512, 110 S.Ct. 2972. Arizona's statutory scheme is factually indistinguishable from Ohio's, *see* Ariz. Rev.Stat. § 36–2152(D) (Supp.2000) (designating proceedings confidential); Ariz.Rev. Stat. § 38–504(B) (Supp.2000) (making disclosure of confidential information by public employees unlawful), and, therefore, satisfies the *Bellotti* requirements. Further, the Supreme Court held that, standing alone, allowing a minor to use her initials is sufficient to protect a minor's anonymity. *See Planned Parenthood v. Ashcroft,* 462 U.S. 476, 491 n. 16, 103 S.Ct. 2517, 76 L.Ed.2d 733 (1983). Therefore, allowing a minor to file under a fictitious name in Arizona also satisfies the anonymity requirement.

■ Plaintiffs argue that Arizona's provisions are not comparable to the statutes on which Defendants rely because so many people are excluded from Arizona's statutory definition of "public," such that any employee could access the minor's file without a valid reason. The exception to the definition of public does not destroy the confidentiality provided by the statute. The definition is identical to that provided in the Rules of the Supreme Court of Arizona, Rule 123(b)(11), and the Court will not penalize the State for defining its terms. The proceedings are designated

confidential and "the mere possibility of unauthorized, illegal disclosure" is not a sufficient basis on which to base a facial challenge to a statute. *Akron*, 497 U.S. at 513, 110 S.Ct. 2972. On its face the statute takes reasonable steps to protect a minor's anonymity, and the Court assumes that the State will enact procedures that further the statutory and constitutional requirement of confidentiality. A.R.S. § 36–2152 satisfies *Bellotti's* anonymity requirement and is not an undue burden on a minor's right to an abortion.

Plaintiffs also argue that the confidentiality provisions of A.R.S. § 36–2152 violates the informational privacy rights of Plaintiffs' patients. Because the proceedings are confidential and a minor may use a fictitious name, the minor's informational privacy rights are not violated by the statute.[1]

### 7. Maturity and Best Interest

Plaintiffs argue that the statutory language regarding maturity and best interest do not comply with the requirements of *Bellotti*. The statute provides, in relevant part,

A judge of the superior court shall, on petition or motion, and after an appropriate hearing, authorize a physician to perform the abortion if the judge determines that the pregnant minor is mature and capable of giving informed consent to the proposed abortion. If the judge determines that the pregnant minor is not mature or if the pregnant minor does not claim to be mature, the judge shall determine whether the performance of an abortion on her without the consent from one of her parents or her guardian or conservator would be in her best interests and shall authorize a physician to perform the abortion without

consent if the judge concludes that the pregnant minor's best interests would be served.

Ariz.Rev.Stat. § 36–2152(B) (Supp.2000).

■ First, Plaintiffs argue that Arizona's statute unconstitutionally restricts *Bellotti's* requirement that a minor be given the opportunity to establish that she is mature enough to consent to an abortion, because it requires that she "claim" to be mature. The Court disagrees and finds that subsection (B) satisfies *Bellotti* because it first requires that if a judge determines that a minor is mature enough to consent then he shall authorize the abortion. Only after setting forth that requirement does the text of the statute provide the contested language that if she does not "claim" to be mature then the judge shall examine her best interest. *See* Ariz.Rev. Stat. § 36–2152(B) (Supp.2000). Further, the minor's right to establish maturity is sufficiently protected by her statutory right to counsel, *see* Ariz.Rev.Stat. § 36–2152(C) (Supp.2000), and Arizona's liberal standard for leave to amend and for automatic amendment to conform to the evidence, *see* Ariz.R.Civ.P. 15(a) & (b). *See Akron*, 497 U.S. at 517, 110 S.Ct. 2972. Additionally, the Court trusts that the state court will treat these cases with sufficient due care, and will comply with *Bellotti* and the statutory requirement that if a minor shows she is mature the judge will authorize the abortion.

■ Second, Plaintiffs argue that the best interests language of the statute impermissibly directs a court's inquiry to whether parental involvement is desirable, while *Bellotti* requires a court to look at whether the abortion is in the minor's best interests regardless of parental involvement. Plaintiffs argument narrows *Bellotti*, which does not require that the absence

---

1. The Court notes that it is not clear that Plaintiffs have standing on behalf of their minor patients to bring this informational pri-

vacy claim, but Defendants did not raise that issue.

of parental involvement be ignored for purposes of the best interests analysis. In fact, the Court stated in *Bellotti* that courts may consider parent's natural interest in their child's welfare when deciding best interests. *Bellotti,* 443 U.S. at 648, 99 S.Ct. 3035. To interpret *Bellotti* otherwise would be to ask courts to ignore the factual circumstances within which the minor presents herself, which is that she does not have parental consent for an abortion. The Supreme Court does not require courts to ignore the minor's circumstances, and has upheld statutes that focus the best interests analysis on the issue of parental involvement. *See Lambert v. Wicklund,* 520 U.S. 292, 297, 117 S.Ct. 1169, 137 L.Ed.2d 464 (1997) ("requiring a minor to show that parental notification is not in her best interests is equivalent to a judicial bypass procedure requiring a minor to show that abortion without notification is in her best interests."); *Akron,* 497 U.S. at 508, 511, 110 S.Ct. 2972. After the Supreme Court's ruling in *Lambert,* there is no question that Arizona's best interests language fits squarely within the constitutional parameters of *Bellotti.*[2]

Plaintiffs argue that *Lambert* is inapplicable because it involved a parental notice provision not a consent statute. Although *Akron* and *Lambert* involved notice statutes, the Supreme Court analyzed them under the stricter constitutional test of *Bellotti* that applies to consent statutes. *Id.* at 295–96, 117 S.Ct. 1169. Therefore, the above analysis is applicable to Arizona's best interests provision, which the Court finds in compliance with *Bellotti.*

## 8. Liability Standard

Plaintiffs argue that the liability standard of A.R.S. § 36–2152 is unconstitutional. Plaintiffs' arguments arise from subsection (A) and subsection (H) of the statute. Subsection (A) provides,

> A person shall not knowingly perform an abortion on a pregnant unemancipated minor unless the attending physician has secured the written consent from one of the minor's parents or the minor's guardian or conservator or unless a judge of the superior court authorizes the physician to perform the abortion pursuant to subsection B.

Ariz.Rev.Stat. § 36–2152(A) (Supp.2000). Subsection (H) provides,

> A person who performs an abortion in violation of this section is guilty of a class 1 misdemeanor. A person is not subject to any liability under this section if the person establishes by written evidence that the person relied on evidence sufficient to convince a careful and prudent person that the representations of the pregnant minor regarding information necessary to comply with this section are true.

Ariz.Rev.Stat. § 36–2152(H) (Supp.2000).

Plaintiffs' first two arguments contend that the liability portions of the statute are impermissibly vague and violate due process. Due process requires that "laws give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly." *Grayned v. City of Rockford,* 408 U.S. 104, 108, 92 S.Ct. 2294, 33 L.Ed.2d 222 (1972). Further, laws must provide clear standards for those who apply them, in order to avoid discriminatory and arbitrary enforcement. *Id.* Vagueness is especially problematic when it threatens to inhibit the exercise of constitutional rights, *see Colautti v. Franklin,* 439 U.S. 379, 391, 99 S.Ct. 675, 58 L.Ed.2d 596 (1979) (citations omitted), and a higher level of certainty is required when a statute imposes

---

**2.** The Honorable Alfredo C. Marquez of this Court ruled on the same argument in March 1998, and the Court follows his analysis in finding this portion of the Arizona statute constitutional. (3/31/98 Order at 8–9, CIV97–773–TUC–ACM.)

criminal penalties, *see Kolender v. Lawson*, 461 U.S. 352, 358 n. 8, 103 S.Ct. 1855, 75 L.Ed.2d 903 (1983). First, Plaintiffs argue that subsection (H) imposes an objective standard of liability, which is impermissible and will cause physicians to hesitate to perform abortions. Second, Plaintiffs argue that subsection (A) and subsection (H) provide conflicting standards for liability, because one is a subjective standard and one is objective. Plaintiffs argue that physicians will not know what conduct triggers criminal liability and will be chilled from providing medical services.

■ The liability standard is set forth in subsection (A) as a subjective "knowingly" standard, while subsection (H) provides an affirmative defense. First, because the prosecution must prove that a physician acted knowingly, a physician will not be chilled from performing abortions based on a fear that he may later be held liable if he is determined to have acted objectively unreasonably. Because the objective standard of subsection (H) is not the liability standard, Plaintiffs' first argument fails. Second, the affirmative defense contained in subsection (H) does not effect the subjective liability standard in subsection (A). Subsection (A) and subsection (H) do not conflict, and physicians and prosecutors are provided sufficient notice regarding what conduct will trigger liability—*knowingly* performing an abortion in violation of the statute.

■ Third, Plaintiffs argue that subsection (H) unconstitutionally shifts the burden to a physician defendant to prove that he "relied on evidence sufficient to convince a careful and prudent person," rather than requiring the prosecution to prove a "knowing" violation of the statute. The prosecution must bear the burden of proving each element of an offense. *See Sullivan v. Louisiana*, 508 U.S. 275, 277, 113 S.Ct. 2078, 124 L.Ed.2d 182 (1993). A defendant may not be required to prove any element of an offense, including the element of intent. *Mullaney v. Wilbur*, 421 U.S. 684, 701–02, 95 S.Ct. 1881, 44 L.Ed.2d 508 (1975). In *Mullaney*, the Court struck down a Maine homicide statute because the prosecution was not required to prove malice aforethought, a required element for murder, rather, a defendant was required to prove heat of passion, which would negate the element of malice aforethought and reduce the charge to manslaughter. *Id.* at 686–87, 95 S.Ct. 1881. An affirmative defense is not unconstitutional because evidence used to prove it may negate an element of the crime, as long as the burden to disprove an element of the State's case does not shift to the defendant. *See Martin v. Ohio*, 480 U.S. 228, 234, 107 S.Ct. 1098, 94 L.Ed.2d 267 (1987).

■ The affirmative defense set forth in subsection (H) does not alter the state's burden to prove all elements of the offense including knowledge. Under the statute, a physician defendant can choose to put forward no defense and the prosecution is required to prove all the elements of the offense including the scienter requirement of knowledge. Or, a defendant may put forward evidence which may raise a reasonable doubt regarding a fact necessary for a finding of guilty, or evidence which may go further and prove the affirmative defense. Under none of the above scenarios is the burden shifted to the defendant to disprove an element of the prosecution's case.[3] *See Martin*, 480 U.S. at 234, 107

---

3. Plaintiffs argue that the Court's construction of the statute leads to an absurd result because a physician who knew that he was performing an abortion in violation of the statute can avoid liability by showing that a prudent person would not have known. To the extent the affirmative defense is nonsensical as Plaintiffs suggest, it is not unconstitutional and is favorable to Plaintiffs. Further,

S.Ct. 1098. Therefore, the statute is not comparable to the homicide statute struck down in *Mullaney*. On its face, A.R.S. § 36–2152 does not shift the burden in violation of *Mullaney*, and is facially constitutional. The Court makes no finding regarding whether the statute will be unconstitutionally applied in a particular trial because the action before the Court is solely a facial challenge.

### CONCLUSION

Based on all of the above, the Court finds that Plaintiffs' facial challenge to A.R.S. § 36–2152 fails on all grounds raised. The Court's ruling is strictly based on the face of the statute, and does not address whether the statute will be constitutionally enacted by the State.

Accordingly, IT IS **ORDERED** that Plaintiffs' requests for declaratory relief and a permanent injunction are **DENIED,** and the Preliminary Injunction entered by the Court is dissolved. IT IS FURTHER **ORDERED** that this action is **DISMISSED** and the Clerk should enter judgment and close this case. IT IS FURTHER **ORDERED** that class representative Janet Napolitano shall provide notice of this Order to all class members.

the affirmative defense provides physicians and prosecutors information regarding the legislators' intent on when prosecution under the statute is intended.